**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**RITA HALL,**

       **Plaintiff,**

**vs.**                                  **CASE NO.: 4:17-cv-00467-RH-CAS**

**DARRYL CHERRY, MICHAEL MCCORD,**
**JAMES JENNISON, GUARDED EXCHANGE,**
**L.L.C., and DEFENDANT JOHN DOES 1-10,**

       **Defendants.**
_____/

**SECOND AMENDED COMPLAINT**

Plaintiff, Rita Hall, by and through her undersigned counsel, hereby sues Darryl Cherry, Michael McCord, James Jennison, Guarded Exchange, L.L.C., and Defendant John Does 1-10, and alleges as follows:

**JURISDICTION AND VENUE**

1.      Plaintiff, Rita Hall (hereinafter "Plaintiff") brings a claim against Defendants, Darryl Cherry, Michael McCord, James Jennison, Guarded Exchange, L.L.C., and Defendant John Does 1-10, who are unknown this time, (hereinafter referred to collectively as the "Defendants") for violation of the Stored Communications Act, 18 U.S.C. § 2701, pursuant to 18 U.S.C. § 2707.

2.      Plaintiff resides in the Northern District of Florida.

3.      Upon information and belief, John Doe Defendants 1-10 reside in the Northern District of Florida and are employed by the Florida Department of Correction's ("DOC") Office of the Inspector General.

4.      Defendant Darryl Cherry (hereinafter "Defendant Cherry") is employed by DOC and works out of the Tallahassee office.

1

5.    Defendant Michael McCord (hereinafter "Defendant McCord") employed by DOC and works out of the Tallahassee office.

6.    Defendant Guarded Exchange, L.L.C. (hereinafter "Guarded Exchange") is a foreign limited liability company registered and authorized to transact business in the State of Florida, with its principal place of business at 14651 Dallas Pkwy, 6th Floor Dallas, Texas 75254. Guarded Exchange conducts business within Florida under contract with DOC.

7.    Defendant James Jennison (hereinafter "Defendant Jennison") is an employee of Guarded Exchange who, at all times material hereto, worked as a contract employee for DOC out of the Tallahassee office.

8.    This Court has jurisdiction over the claim asserted pursuant to 28 U.S.C. § 1331.

9.    Jurisdiction and Venue are proper in the Northern District of Florida (Tallahassee Division) in that the acts of misconduct occurred within the Northern District of Florida.

## THE PARTIES

10.    Plaintiff, Rita Hall, is an employee of DOC and, during the acts complained of, worked out of DOC's Central Office in Tallahassee, Florida, and in Jefferson County.

11.    Defendant Cherry is an Inspector Supervisor within DOC's Office of the Inspector General.

12.    Defendant McCord is a Senior Inspector within DOC's Office of the Inspector General.

13.    Defendant Jennison is a "Cellebrite Certified Forensic Technician" with Guarded Exchange who, at all times material hereto, worked as a contract employee for DOC's Office of the Inspector General. At all times material hereto, Defendant Jennison was working in his official capacity and within the course and scope of his employment.

2

14.     Guarded Exchange provides investigative services, including digital forensic services, to DOC. Guarded Exchange employs and contracts out Defendant Jennison and is therefore responsible and vicariously liable for Defendant Jennison's actions occurring within the course and scope of his employment.

15.     The identities of Defendant John Does 1-10 are currently unknown at this time and discovery will be required to determine their identities. Once they become known, Plaintiff will amend to include those Defendants specifically by name.

## ALLEGATIONS

16.     Plaintiff was co-workers and friends with Douglas Glisson (hereinafter "Glisson") and John Ulm (hereinafter "Ulm"), two former sworn law enforcement employees of DOC's Office of the Inspector General. Glisson and Ulm had filed repeated whistleblower complaints and lawsuits against DOC. Plaintiff is still friends with Glisson and Ulm today.

17.     DOC is a state agency that is responsible for the custody of inmates in the State of Florida's Correctional and Prison systems.

18.     The DOC's Office of the Inspector General maintains an electronic case database known as the Inspector General Investigative Intelligence System, colloquially known "IGIIS." All Case related documents are required to be memorialized and uploaded into IGIIS.

19.     On April 27, 2016, Plaintiff wrote a Memorandum (see attached **Exhibit A**) concerning the following issues:

        a.      The failure of DOC's senior Inspector General employees to upload investigative reports to IGIIS which should have been uploaded to IGIIS;

b.     The investigative report that should have been uploaded to IGIIS was a public record pursuant to Florida Statutes Chapter 119, subject to statutory and constitutionally mandated production.

c.     The Memorandum recites a conversation between the Plaintiff and a senior administrative/clerical staff member of DOC's Office of the Inspector General reciting the administrative staff member could not find records requested via a public records request in the IGIIS system.

d.     The Memorandum further recites that the staff member had advised the then Acting Inspector General, Ken Sumpter (hereinafter "Sumpter"), that she could not find the specific investigative report, to which Sumpter opened a drawer in his desk and provided to the staff member the investigative report that she had been searching for to comply with the public records request.

20.    Plaintiff's Memorandum would have constituted a protected disclosure under the Florida Public Whistleblower Act. *See* § 112.3187, Fla. Stat.

21.    Plaintiff's Memorandum and the issues discussed therein were relevant and supportive of the claims made by Glisson and Ulm, contributing in part to a settlement between DOC and six whistleblowers,[1] including Glisson and Ulm, wherein those plaintiffs settled their claims for $800,000.00.[2] Shortly after the settlement of the six whistleblowers case, Plaintiff was placed under administrative investigation by DOC. *See infra*.

22.    As a result of the Memorandum and the conclusion of the six whistleblowers claims, Plaintiff suffered severe retaliation, harassment, and was victim to a hostile work environment within DOC's Office of the Inspector General. A substantial part of the retaliation

---

[1] Plaintiff was not one of these six whistleblowers.
[2] The terms of the settlement are public record.

against the Plaintiff was specifically violating her rights under the Stored Communications Act. *See infra*. Additionally, the Defendants violated Plaintiff's rights under the Fourth Amendment as a result of an unlawful search and seizure of attorney-client privileged communications resulting from violations of the Stored Communications Act.

23.     Plaintiff was harassed by senior staff in DOC's Office of the Inspector General, including Defendant Cherry as a result of the Memorandum.

24.     Plaintiff generally was made aware of policies and procedures restricting DOC employees from accessing her personal Gmail account from her work-issued cell phone when she signed off on receiving the DOC policy manual.

25.     Subsequently, when Plaintiff became specifically aware of DOC's policy concerning accessing third party email accounts on work-issued cell phones, Plaintiff unsynced her work email from her phone so that she would no longer be able to send or automatically receive personal emails from her work-issued cell phone. In other words, the automatic syncing and downloading of new emails which had not previously been on the phone (stored communications) was disabled. To access these personal emails from the work-issued phone, the person in possession of the phone, including Plaintiff at the time, would have to take affirmative steps to download the new emails sent to Plaintiff's Gmail account. In other words, Plaintiff had saved her username and password for her Gmail account into her work-issued cell phone. When Defendants Cherry, McCord, and Jennison, accessed the phone and went to Gmail on the phone's Internet browser or webmail application, they only needed to click "Update" or "Get Mail" to access her private Gmail account and previously unopened emails. *See infra*.

26.     On February 2, 2017, Plaintiff was served with a notice of investigation informing her that she was under administrative investigation for which termination could result, and that she

was being placed on paid administrative leave effectively immediately. On February 2, 2017, Plaintiff was required to turn over all of her work-issued equipment, including her computer and cell phone. The notice of administrative investigation was silent as to why Plaintiff was under administrative investigation.

27.     On March 1 2017, Plaintiff's Gmail account informed her that her Gmail account for her private, personal, and confidential emails, of which she used to communicate with her attorney and her attorneys' staff, had been accessed from her work issued cell phone on or about February 9, 2017, and again approximately one week later, without her consent. Plaintiff's phone had not been in her possession for approximately thirty days prior to March 1, 2017.

28.     When Plaintiff logged onto her Gmail account from a computer on March 1, 2017, she had at least six emails from her attorney that had not been previously opened by the Plaintiff, which she had received prior to Defendants Cherry, McCord, and Jennison, accessing her Gmail account on February 9, 2017 and again approximately one week later. Additionally, she had an email from the Employee Assistance Program discussing her medical conditions and which had not been previously opened by the Plaintiff. When Defendants Cherry, McCord, and Jennison, synced Plaintiff's Gmail account, they were able to view portions of these emails without even clicking on them, allowing them to conceal their misconduct. Defendants Cherry, McCord, and Jennison, accessed these private, unopened emails sent to the Plaintiff and took screenshots of the emails for use in an administrative investigation against the Plaintiff. These acts by Defendants Cherry, McCord, and Jennison, violated the Stored Communications Act. Plaintiff suffered actual damages as a result of the Defendants Cherry, McCord, and Jennison's violations of the Stored Communications Act. *See infra.*

29.     Plaintiff did not consent to her Gmail account being accessed, and implicitly and explicitly expressed to DOC her intent for those emails to remain confidential and private by her act of unsyncing, or attempting to unsync, her Gmail account from her work-issued cell phone.

30.     On March 2, 2017, Plaintiff, through her counsel, informed DOC that its employees/agents accessed her personal Gmail account, which included her attorney client communications.

31.     Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, were able to and did access emails received by Plaintiff that **she had not previously opened**. The Defendants intentionally accessed, without authorization, a facility (i.e. a Gmail account) through which an electronic communication service (i.e. e-mail) is provided and thereby obtained access to a wire or electronic communication (i.e. Plaintiff's emails) while they were in electronic storage (i.e. unopened emails) in such system. *See Vista Marketing, LLC v. Terri A. Burkett*, 812 F.3d 954, 962-64 (11th Cir. 2016).

32.     On March 13, 2017, DOC responded to Plaintiff's Counsel's Letter of March 2, 2017, stating that DOC had spoken with its employees and **no one accessed Plaintiff's private emails**, including her attorney client privileged emails, from her work issued cell phone. *See* **Exhibit B**. Specifically, DOC stated:

> "In response to this assertion it has since been verified by members of the Inspector General's staff that no one synced to Ms. Hall's internet Gmail account at any time subsequent to her turning in her cell phone." *See* Exhibit B.

33.     On March 15, 2017, Plaintiff, through her counsel, provided DOC with the screenshot from her Gmail account (*See* Gmail screenshot, attached hereto as **Exhibit C**) unequivocally disproving DOC's statement that no one at DOC accessed Plaintiff's private and attorney client privileged emails on her Gmail account. In other words, The Defendants, by syncing

and accessing Plaintiff's Gmail account to download new emails, downloaded emails that were not previously on Plaintiff's phone (but were being stored by Google), and were not previously opened by Plaintiff (and thus were stored communications under the Stored Communications Act), after Plaintiff was ordered to turn in her phone. This is substantiated by the fact that the Defendants downloaded and screenshotted emails from Plaintiff's Gmail account which post-date February 2, 2017, the date that she was ordered to return her work-issued cell phone to DOC.

34.    On March 23, 2017, in response to Plaintiff's March 15, 2017, letter, DOC stated that it was "looking further into alleged improprieties." *See* **Exhibit D**. DOC never responded to inform Plaintiff why DOC employees were accessing her personal and private Gmail account and her attorney client privileged communications.

35.    On approximately October 16, 2017, Plaintiff determined that Defendant Cherry was in possession of her work issued cell phone at the time her Gmail account was accessed based upon DOC chain of custody documentation. Further, it was also determined by Plaintiff that Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, screenshotted her Gmail account communications, including emails from her attorneys and the Employee Assistance Program discussing her medical conditions. These emails had not been previously opened by the Plaintiff. Despite actual knowledge that they were accessing HIPAA protected emails and attorney client privileged emails that had not been previously opened by the Plaintiff, Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, continued to access Plaintiff's Gmail account by screenshotting the emails and sending them to themselves, which were then used in an administrative investigation to concoct evidence to take disciplinary action against Plaintiff.

### *DOC INVESTIGATION INTO ALLEGATIONS OF PRIVATE EMAIL USE ON WORK ISSUED PHONE BY PLAINTIFF IN VIOLATION OF DOC POLICY*

36. DOC is permitted to investigate alleged violations of statutes, rules, policies, or procedures, by its employees so long as **the means and methods** of such investigation do not violate Federal law. Additionally, the Defendants may not rely on any state statute, rule, policy, or procedure to justify their conduct if such statute, rule, policy or procedure is inconsistent with or violates the Stored Communications Act. *See* the Supremacy Clause to the United States Constitution (Article VI, Clause 2).

37. This conduct by the Defendants amounts to an unreasonable search and seizure under the Fourth Amendment to the United States Constitution.

38. To prove an alleged violation of policy or procedure, the Defendants merely only needed to confirm that an external email account had been used on the work-issued cell phone, either through Internet search history or an App on the phone. Nevertheless, the Defendants exceeded any permission they may have enjoyed as Plaintiff's employer by accessing Plaintiff's unopened emails on her private Gmail account in February of 2017, which was in violation of the Stored Communications Act. Thus, the Defendants' actions as alleged herein are not privileged under the Stored Communications Act.

## COUNT I
*Violation of 18 U.S.C. § 2701, pursuant to 18 U.S.C. § 2707*
*Against Defendants Cherry, McCord, Jennison, and John Doe Defendants*
*(Outside the course and scope of their employment)*

39. Plaintiff Rita Hall realleges and incorporates Paragraphs 1 through 38 as if fully set forth herein.

40. Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, accessed Plaintiff's Gmail account without consent or authorization, in retaliation for Plaintiff's association

with Glisson and Ulm, as well as her creation of the Memorandum that significantly aided their case.

41.     Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, intentionally and knowingly accessed Plaintiff's Gmail account and her stored communications, as defined by 18 U.S.C. Chapter 121.

42.     Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, unlawfully accessed Plaintiff's stored communications in violation of 18 U.S.C. § 2701.

43.     For purposes of this Count, Defendants Cherry, McCord, Jennison and John Doe Defendants 1-10 acted outside the course and scope of their employment.

44.     Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, intentionally and knowingly accessed Plaintiff's stored communications without authorization or consent.

45.     Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, willfully and intentionally accessed Plaintiff's stored communications in violation of the Stored Communications Act, 18 U.S.C. Chapter 121.

46.     As an actual and proximate result of the Defendants Cherry, McCord, Jennison, and John Doe Defendants 1-10, unlawful acts and violations, which include, but are not limited to, violations of 18 U.S.C. § 1983 and intentional violations of Plaintiff's attorney-client privilege, which she enjoyed with her counsel and did not waive, Plaintiff has suffered actual damages.

47.     Under the doctrine of respondeat superior, Guarded Exchange is vicariously liable for the actions of its employee, Defendant Jennison, that occurred within the course and scope of his employment.

48.     Plaintiff is entitled to a reasonable attorneys' fee and costs pursuant to 18 U.S.C. §

2707 (b)(3).

WHEREFORE, Plaintiff, Rita Hall, demands Judgment against Defendants Cherry,

McCord, Jennison, and John Doe Defendants 1-10 for actual damages, statutory damages, punitive

damages, reasonable attorneys' fees, and costs, and such other relief as this Court deems

appropriate.

**COUNT II**
*Violation of 18 U.S.C. § 2701, pursuant to 18 U.S.C. § 2707*
*Against Defendant Guarded Exchange*
*(Vicarious liability for the acts of Defendant Jennison)*
*(This Count is Pled in the Alternative)*

49.     Plaintiff Rita Hall realleges and incorporates Paragraphs 1 through 38 as if fully set

forth herein.

50.     Defendant Jennison accessed Plaintiff's Gmail account without consent or

authorization and in violation of the Fourth Amendment to the United States Constitution.

51.     Defendant Jennison intentionally and knowingly accessed Plaintiff's Gmail

account and her stored communications, as defined by 18 U.S.C. Chapter 121.

52.     Defendant Jennison, and John Doe Defendants 1-10, unlawfully accessed

Plaintiff's stored communications in violation of 18 U.S.C. § 2701.

53.     For purposes of this Count Defendant Jennison acted within the course and scope

of his employment.

54.     At all material times hereto, Defendant Jennison was an employee of Defendant

Guarded Exchange.

55.     Defendant Jennison intentionally and knowingly accessed Plaintiff's stored

communications without authorization or consent.

56.     Defendants Jennison willfully and intentionally accessed Plaintiff's stored communications in violation of the Stored Communications Act, 18 U.S.C. Chapter 121.

57.     As an actual and proximate result of the Defendant Jennison's unlawful acts and violations, which include, but are not limited to, violations of 18 U.S.C. § 1983 and intentional violations of Plaintiff's attorney-client privilege, which she enjoyed with her counsel and did not waive, Plaintiff has suffered actual damages.

58.     Under the doctrine of respondeat superior, Guarded Exchange is vicariously liable for the actions of its employee, Defendant Jennison, that occurred within the course and scope of his employment.

59.     For purposes of this Count, Plaintiff alleges that the acts of Defendant Jennison alleged herein occurred within the course and scope of Jennison's employment with Defendant Guarded Exchange.

60.     Plaintiff is entitled to a reasonable attorneys' fee and costs pursuant to 18 U.S.C. § 2707 (b)(3).

WHEREFORE, Plaintiff, Rita Hall, demands Judgment against all Defendant Guarded Exchange for actual damages, statutory damages, punitive damages, reasonable attorneys' fees, and costs, and such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 25th day of June, 2018.

Respectfully submitted,

The Law Offices of
STEVEN R. ANDREWS, P.A.
822 North Monroe Street
Tallahassee, Florida 32303

12

T: (850) 681-6416 / F: 681-6984


  */s/ Ryan J. Andrews*
RYAN J. ANDREWS (FBN 0104703)
STEVEN R. ANDREWS (FBN 0263680)
BRIAN O. FINNERTY (FBN 0094647)
Service:  service@andrewslawoffice.com

  */s/ Steven R. Andrews*
RYAN J. ANDREWS (FBN 0104703)
STEVEN R. ANDREWS (FBN 0263680)
BRIAN O. FINNERTY (FBN 0094647)
Service:  service@andrewslawoffice.com
*Attorney for Plaintiff*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by electronic transmission this 25th day of June, 2018, to:

  Robert J. Sniffen, Esq.
  Kevin C. Kostelnik, Esq.
  Michael R. Fidrych, Esq.
  Sniffen & Spellman, P.A.
  123 North Monroe Street
  Tallahassee, FL 32301
  rsniffen@sniffenlaw.com
  kkostelnik@sniffenlaw.com
  mfidrych@sniffenlaw.com
  *Counsel for Defendant Cherry*

  */s/ Ryan J. Andrews*
RYAN J. ANDREWS

13



# FLORIDA DEPARTMENT OF CORRECTIONS
# OFFICE OF THE INSPECTOR GENERAL

*Governor*
**RICK SCOTT**
*Secretary*
**JULIE L. JONES**
*Inspector General*
**JEFFERY T. BEASLEY**

*An Equal Opportunity Employer*

*501 S. Calhoun Street, Tallahassee, FL 32399-2500*

http://www.dc.state.fl.us

To:         MEMORANDUM

From:      RITA HALL, SENIOR INSPECTOR

Date:      April 27, 2016

Subject:   CONVERSATION OF 04/27/2016

---

On 04/27/2016 between 0700 and 0715 hours I spoke with Ms. Leslie Rodes, a long-term member of the administrative/clerical staff assigned to the OIG suite within Central Office. I have known Ms. Rodes for over ten years and believe she is an honest and forthright person.

During the conversation Ms. Rodes related some issues she had recently been experiencing with the heavy work flow and duty assignments which had been shifted around due to staffing changes. She stated she was continuing to receive a great deal of requests for documents from attorneys and staff members, noting she was currently behind approximately two weeks in completing the number of requests which had been received.

She laughed and stated "…and as if that (workload) isn't enough, now I guess I'm tracking down the paperwork, too."

She proceeded to relate an incident to me in which an unnamed attorney had requested a document from her which she was unable to find in our IGIIS system—our electronic records tracking system.

She said the attorney had requested a specific document, but she could not find it. Ms. Rodes said she had looked everywhere she could think of but still had not been able to find the requested document.

She stated "So I went in there (nodding with her head toward the office of Interim Inspector General Ken Sumpter) and asked him if he knew anything about it and he reached into a drawer and pulled it out and handed it to me!"

/rjh



**EXHIBIT**

**A**

# FLORIDA DEPARTMENT of CORRECTIONS

Governor
**RICK SCOTT**

Secretary
**JULIE L. JONES**

501 South Calhoun Street, Tallahassee, FL 32399-2500                    http://www.dc.state.fl.us

March 13, 2017

**<u>Via Electronic Transmission</u>**

Ryan Andrews, Esq.
822 North Monroe Street
Tallahassee, FL. 32399
ryan@andrewslawoffice.com

Re: Notice of Claim/Cease and Desist / Preservation Letter

Dear Mr. Andrews,

In your letter of March 2, 2017, you allege that after Ms. Hall provided her passcode for her state issued cell phone, someone at the Department, on or about February 9, 2017, synced her "private" Gmail account and accessed her "private" emails. In response to this assertion it has since been verified by members of Inspector General's staff that no one synced to Ms. Hall's internet Gmail account at any time subsequent to her turning in her cellphone. If Ms. Hall received an alert of some kind that such an occurrence took place, please provide a copy of the alert so we may inquire further into the matter. As you are aware, authorized communications on a state issued cell phone, including all email communications and internet usage, are strictly governed by Department policies. For instance, Department policy 206.008(10)(b) states:

> (b) Because of the security risk inherent in accessing personal or third (3rd) party e-mail accounts utilizing state resources, *employees will not access unauthorized e-mail accounts. This prohibition includes "web mail" such as Hotmail, Yahoo mail, Gmail, etc.* (Emphasis added).

We disagree with your assessment that any emails stored to the Department's cellphone from a Gmail account are private or subject to attorney/client privilege. In response to your letter all such emails will be preserved.

/s/ David De La Paz
Assistant General Counsel

Cc: Kenneth Steely



EXHIBIT
B

★INSPIRING SUCCESS BY TRANSFORMING ONE LIFE AT A TIME ★



EXHIBIT

C

FLORIDA
DEPARTMENT of
CORRECTIONS

Governor
**RICK SCOTT**

Secretary
**JULIE L. JONES**

501 South Calhoun Street, Tallahassee, FL 32399-2500                         http://www.dc.state.fl.us

March 23, 2017

**<u>Via Electronic Transmission</u>**

Ryan Andrews, Esq.
822 North Monroe Street
Tallahassee, FL. 32399
ryan@andrewslawoffice.com

      Re: Re: Rita Hall / Response to your Letter dated March 13, 2017

Dear Mr. Andrews,

This letter will reaffirm that any emails from a Gmail account stored to the Department's cellphone turned in by Ms. Hall will be preserved as requested. Also, in view of the document submitted along with your letter dated March 15, 2017, listing active devices on a Google account, the Office of Inspector General is looking further into the alleged improprieties.

                        /s/ David De La Paz
                        Assistant General Counsel

Cc: Kenneth Steely
      Lester Fernandez



EXHIBIT
D

★INSPIRING SUCCESS BY TRANSFORMING ONE LIFE AT A TIME ★